## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JEFFREY ABBOTT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 07-2441-KHV** |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Jeffrey Abbott brought suit against BNSF Railway Company ("BNSF") alleging retaliatory discharge in violation of public policy and breach of implied and express contract. This matter comes before the Court on Defendant's Motion To Dismiss Count I of Plaintiff's Complaint For Lack Of Subject Matter Jurisdiction, Or In The Alternative For Failure To State A Claim (Doc. #15) filed February 22, 2008. For reasons stated below, the Court sustains the motion and dismisses plaintiff's retaliatory discharge claim for lack of subject matter jurisdiction.

### Legal Standards

Rule 12(b)(1), Fed. R. Civ. P., governs motions to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). In a facial challenge, the district court must accept the allegations of the complaint as true. Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001). Here, defendant challenges the face of the complaint so the Court presumes the accuracy of plaintiff's factual allegations and does not consider evidence outside the complaint.

Courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiff bears the burden of showing that jurisdiction is proper, see id., and must demonstrate that the case should not be dismissed, see Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. Id.

### Factual Background

BNSF hired plaintiff in 1979. See Petition ¶ 5, attached to defendant's Notice Of Removal (Doc. #1). Plaintiff worked as a Certified Engineer as defined in Title 49 of the Code of Federal Regulations. See Petition ¶ 6. In April of 2006, plaintiff reported that one of his employees had not taken a recertification test which is mandated by Title 49 of the Code of Federal Regulations. See Petition ¶ 7. On February 20, 2007, BNSF terminated plaintiff's employment as General Director of Railroad Training Services and forced him to take an hourly union position. See Petition ¶ 13. Plaintiff alleges that BNSF discharged him from his prior position in retaliation for his report of a violation of federal law in violation of public policy and breached an express and implied contract of employment. BNSF seeks to dismiss plaintiff's retaliatory discharge claim under Kansas law.

### Analysis

The Federal Railroad Safety Act ("FRSA") protects railroad employees from retaliation for whistleblowing activities such as reporting safety violations.  See 49 U.S.C. § 20109(a).  Before 2007, Section 20109(c) of FRSA mandated that a "dispute, grievance or claim [for whistleblower retaliation] is subject to resolution under section 3 of the Railway Labor Act (45 U.S.C. § 153)."  Effective August 3, 2007, however, prior subsection (c) was removed and a new subsection (f) was added.  Section 20109(f) now provides as follows: "No preemption.--Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law."  49 U.S.C. § 20109(f).

Defendant argues that (1) the prior version of FRSA applies to plaintiff's claim because it discharged plaintiff from his management position before the effective date of the FRSA amendments in August of 2007 and (2) the prior version of FRSA preempts plaintiff's retaliatory discharge claim under Kansas law.  Plaintiff maintains that the current version of FRSA applies retroactively to his claim and that even under the prior version of FRSA, his state law claim is not preempted.

## I.    Retroactive Application Of Current Version Of FRSA

The current version of FRSA does not preempt state law claims for retaliatory discharge.  See 49 U.S.C. § 20109(f).  Defendant argues that the version of FRSA which was in effect at the time of the alleged wrongful conduct (i.e. the termination of plaintiff's employment from a management position in February of 2007) applies in this case.

In general, a strong judicial presumption exists against the retroactive application of new laws to pending cases.  See Fed. Deposit Ins. Corp. v. UMIC, Inc., 136 F.3d 1375, 1385 (10th Cir. 1998), cert. denied, 525 U.S. 962 (1998).  A statute does not apply retroactively unless Congress expressly

evidences its intent to apply the statute to past conduct.  See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 237 (1995); Landgraf v. USI Film Prods., 511 U.S. 244, 277 (1994); see also Martin v. Hadix, 527 U.S. 343, 352 (1999) (statutes generally presumed non-retroactive).  To determine whether a statute applies retroactively, the Court applies a three-part test (the Landgraf-Lindh test).  See Landgraf, supra; Lindh v. Murphy, 521 U.S. 320 (1997); Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1148 (10th Cir. 1999), cert. denied, 529 U.S. 1041 (2000); UMIC, 136 F.3d at 1385-86.  First, the Court must determine "whether Congress has expressly prescribed the statute's proper reach." Landgraf, 511 U.S. at 280; accord UMIC, 136 F.3d at 1386.  If Congress has done so, the Court need not resort to judicial default rules.  If, however, the statute contains no such express command, the Court employs normal rules of statutory construction to ascertain the statute's temporal scope.  See Lindh, 521 U.S. at 326-27; UMIC, 136 F.3d at 1386.  Finally, in situations where rules of statutory construction do not reveal the statute's temporal scope, the Court must consider whether the statute will have a retroactive effect.  See Landgraf, 511 U.S. at 280; UMIC, 136 F.3d at 1386.  If the Court finds that the statute has a retroactive effect, it triggers the traditional judicial presumption against retroactivity and absent clear congressional intent, the new law will not be applied to pending cases. See Landgraf, 511 U.S. at 280.

Under step one of the Landgraf-Lindh test, Congress did not expressly prescribe the temporal scope of Section 20109.  The Court therefore proceeds to step two and applies normal rules of statutory construction to determine the temporal scope of the statutory provision.  A basic principle of statutory construction is that a negative inference may be drawn from the exclusion of language

from one statutory provision that is included in other provisions of the same statute.[1] See Lindh, 521 U.S. at 330; see also Russello v. United States, 464 U.S. 16, 23 (1983) (where Congress includes particular language in one section of statute but omits it in another section of same statute, generally presumed that Congress acts intentionally and purposely in disparate inclusion or exclusion); Bd. of County Comm'rs v. E.E.O.C., 405 F.3d 840, 845 (10th Cir. 2005) (assume Congress knows law and legislates in light of federal court precedent). Here, while amended Section 20109 does not address whether it applies retroactively, amended Section 20106 specifically provides to what extent that subsection should apply retroactively. See 49 U.S.C. § 20106(b)(2) (2007) ("This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.").

The congressional silence in amended Section 20109, compared to the express retroactive language in amended Section 20106, warrants a negative inference against retroactive application of Section 20109. See Lindh, 521 U.S. at 329 (if Congress was reasonably concerned to ensure that another section of the Act be applied to pending cases, it should have been just as concerned about the section under review unless it had different intent that latter section not be applied to pending cases). Accordingly, the amended version of Section 20109 should only be applied prospectively from its effective date: August 3, 2007. Because the events underlying plaintiff's claim took place

---

[1]     In Lindh, the Supreme Court applied this principle and concluded that certain limitations on the availability of habeas relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA") applied only to cases filed after the statute's effective date. See Lindh, 521 U.S. at 329-30. The Supreme Court noted that Congress' failure to identify the temporal reach of the limitations which governed noncapital cases stood in contrast to its express command in the same statute that new rules governing habeas petitions in capital cases apply to cases pending on or after the date of enactment. See id.

no later than April of 2007, the amended version of Section 20109 does not apply to his claim.

Even if the normal rules of statutory construction did not define the temporal scope of Section 20109, the Court would reach the same result under the third part of the <u>Landgraf-Lindh</u> test. A statute has a retroactive effect if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability" on completed conduct or transactions. <u>Landgraf</u>, 511 U.S. at 269 (quoting <u>Soc'y for Propagation of the Gospel v. Wheeler</u>, 22 F. Cas. 756, 767 (No. 13,156) (C.C.N.H. 1814) (Story, J.)); <u>id.</u> at 280 (retroactive laws impair rights party possessed when he acted, increase party's liability for past conduct or impose new duties on completed transactions). The amended version of Section 20109 creates a new obligation on a defendant by raising the cap for punitive damages under the statute from $20,000 to $250,000. <u>See</u> 49 U.S.C. § 20109(c) (1994); 49 U.S.C. § 20109(d)(3) (2007). In addition, because the amended version of Section 20109 no longer preempts state common law claims for wrongful discharge, it effectively imposes new duties on rail carriers for past conduct.

Under parts two and three of the <u>Landgraf-Lindh</u> test, Section 20109 of FRSA should not be applied retroactively.

## II.       Prior Version Of FRSA

Applying the version of FRSA in effect when BNSF terminated plaintiff's management position, the Court must determine whether Section 20109 preempts plaintiff's retaliatory discharge claim under Kansas law. Under Article VI of the United States Constitution, the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, Cl. 2; <u>see</u> <u>Choate v. Champion Home Builders Co.</u>, 222 F.3d 788, 791 (10th Cir. 2000). Because of the supremacy of federal law, state common law

or statutory law that conflicts with federal law is without effect.  Emerson v. Kan. City S. Ry. Co., 503 F.3d 1126, 1128-29 (10th Cir. 2007) (citations omitted).  "Pre-emption is fundamentally a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the court's task is an easy one."  English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990) (internal citation omitted).

Federal preemption of state law may be either express or implied.  Id. at 1129; Choate, 222 F.3d at 792.  Express preemption occurs when Congress "define[s] explicitly the extent to which its enactments pre-empt state law."  Emerson, 503 F.3d at 1129 (quoting Choate, 222 F.3d at 792). Implied preemption includes both field preemption and conflict preemption.  Field preemption occurs when "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively."  Sprietsma v. Mercury Marine, 537 U.S. 51, 64 (2002) (internal quotations and citations omitted).  On the other hand, conflict preemption arises when it is either "impossible for a private party to comply with both state and federal requirements," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Emerson, 503 F.3d at 1129 (quoting Sprietsma, 537 U.S. at 64) (further quotations and citations omitted). Preemption analysis ordinarily "starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress."  Medtronic v. Lohr, 518 U.S. 470, 485 (1996) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)) (further citations omitted).  Thus, whether a state cause of action is preempted in a particular case is a question of congressional intent.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985).

BNSF argues that FRSA preempts the field of wrongful discharge claims in retaliation for

reporting a federal railroad safety violation.  The FRSA protects railroad employees who report safety concerns from discrimination and provides a mechanism for the resolution of claims of retaliation against employee whistleblowers.  49 U.S.C. § 20109(a), (c).  FRSA contains a general preemption provision, 49 U.S.C. § 20106,[2] but Congressional intent to preempt state whistleblower claims is evidenced by Section 20109(c), which mandates that "[a] dispute, grievance, or claim arising under this section is subject to resolution under section 3 of the Railway Labor Act (45 U.S.C. § 153)."  See Rayner v. Smirl, 873 F.2d 60, 65 (4th Cir. 1989); Sereda v. Burlington N. Santa Fe R.R. Co., No. 4:03-cv-10431, 2005 WL 5892133, at *3 (S.D. Iowa Mar. 17, 2005).  At least two courts have held that the specific remedial scheme in Section 20109(c) and accompanying legislative history show that an aggrieved railroad employee's sole remedy is under FRSA.  See Rayner, 873 F.2d at 65; Sereda, 2005 WL 5892133, at *3-6.

The text and legislative history of Section 20109 indicate a congressional intent to preempt state common law claims alleging retaliatory discharge for reporting a federal railroad safety violation.  Any claim by a railroad whistleblower for retaliation is subject to mandatory dispute resolution under Section 20109(c).  Sereda, 2005 WL 5892133, at *4; see Consol. Rail Corp. v. United Transp. Union, 947 F. Supp. 168, 171 (E.D. Pa. 1996) (when Congress added employee safety provisions in 1980, it intended sole enforcement through existing grievance procedures in Section 3 of RLA) (citing H.R. Rep. No. 96-1025, at 8 (1980), reprinted in 1980 U.S.C.C.A.N. 3830, 3832)).

---

[2]        Former Section 20106 provided in part that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable."  In CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 675 (1993), the Supreme Court held that former Section 20106 authorized the Secretary of Transportation to issue regulations preempting state common law claims.

The mandatory phrasing of former section 20109 stands in contrast to the permissive language of current Section 20109 under which an aggrieved employee "may" file a complaint with the Secretary of Labor based on retaliation for whistleblowing activities.  See 47 U.S.C. § 20109(c)(1); Sereda, 2005 WL 5892133, at *4.  The permissive language of the current statute implies that a covered employee remains free to pursue a claim under any available remedy, whereas the language of former Section 20109 requires that a railroad employee who wishes to invoke the FRSA whistleblower protections utilize the specific remedy provided by Section 20109(c).  See id.

FRSA legislative history supports a finding that Congress intended that an aggrieved employee's sole remedy would be under Section 20109(c).  A report of the House Committee on Interstate and Foreign Commerce concerning the 1980 amendments, which first granted whistleblower protection to railroad employees, states that "the Committee intends [subsection (c)] to be the exclusive means for enforcing this section."  Federal Railroad Safety Authorization Act of 1980, H.R. Rep. No. 96-1025 (1980), reprinted in 1980 U.S.C.C.A.N. 3830, 3840-41; see also id. at 3832 (whistleblower protections enforced solely through existing grievance procedures provided by Section 3 of RLA including adjustment board, its divisions and public law boards).

In 1988, in amending FRSA, Congress again stated its intent that any dispute for whistleblower retaliation "be resolved by the Adjustment Board or any other Board of Adjustment created under section 3 of the Railway Labor Act."  Rail Safety Improvement Act of 1988, S. Rep. 100-153, reprinted in 1988 U.S.C.C.A.N. 695, 706 (Sept. 1, 1987); see Sereda, 2005 WL 5892133, at *5.  In 1994, five years after the Fourth Circuit decision in Rayner, which held that Section 20109 preempts state law whistleblower claims, Congress amended FRSA as part of a revision and codification of Title 49, but it did not make any substantive change in the law.  S. Rep. No. 103-265,

at 5 (1994).  "The lack of any substantive changes in the 1994 amendment, or, for that matter, any

clarification concerning the preemptive effect of section 20109(c) is notable, coming as it did after

the decision in Rayner. . . .  Congress was surely aware of the Fourth Circuit's decision, yet it

evidently saw no need to amend the FRSA to address [Rayner's] statutory analysis. . ."  Sereda, 2005

WL 5892133, at *6.  The text and legislative history of FRSA demonstrate that Congress intended

that Section 20109(c) serve as a railroad employee's exclusive remedy for whistleblower

discrimination.  See id.

The election of remedies provision in the prior version of FRSA does not alter the conclusion

that the statute preempts state common law remedies which may also protect railroad whistleblowers.

Id.; see 49 U.S.C. § 20109(d) (employee "may not seek protection under both this section and another

provision of law for the same allegedly unlawful act of the carrier").  This provision may allow an

aggrieved employee to pursue a claim alleging wrongful discharge for some reason other than

whistleblower retaliation (for example, disability discrimination), but it does not permit an employee

to file a whistleblower retaliation claim under state common law.  Sereda, 2005 WL 5892133, at *4;

see also Rayner, 873 F.2d at 66 n. 1 (general election of remedies provision addresses only federal

statutes and regulations, not common law remedies of the 50 states).[3]

---

[3]    Plaintiff argues that the preemption analysis in Rayner is no longer valid in light of
the United States Supreme Court decision in Hawaiian Airlines, Inc. v. Finazzo, 512 U.S. 246 (1994).
Hawaiian Airlines held that the federal Railway Labor Act ("RLA") did not preempt claims under
the Hawaii Whistleblower Protection Act.  Id. at 266.  The Supreme Court held that Congress
intended to limit the type of grievances addressed by the RLA to "disputes involving the application
or interpretation of a CBA (collective bargaining agreement)."  Id. at 255.  Plaintiff contends that
because all disputes brought under the FRSA are subject to the administrative procedures of the RLA,
Hawaiian Airlines implicitly overruled Rayner.  Plaintiff, however, misconstrues the relationship
(continued...)

**IT IS THEREFORE ORDERED** that <u>Defendant BNSF's Motion To Dismiss Count I Of Plaintiff's Complaint For Lack Of Subject Matter Jurisdiction, Or In The Alternative For Failure To State A Claim</u> (Doc. #15) filed February 22, 2008 be and hereby is **SUSTAINED**.  The Court dismisses Count I of plaintiff's complaint.

Dated this 16th day of September, 2008 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

---

[3](...continued)

between the FRSA and the RLA.  The FRSA incorporates only the RLA's dispute resolution procedures, not the jurisdictional limitations or preemptive scope of the RLA.  49 U.S.C. § 20109(c); <u>see</u> <u>Rayner</u>, 873 F.2d at 64.  <u>Hawaiian Airlines</u> does not overrule or otherwise impact the preemption analysis in <u>Rayner</u>.  <u>See</u> <u>Sereda</u>, 2005 WL 5892133, at *6.

The Court recognizes that at least one court has reached the opposite conclusion on the effect of <u>Hawaiian Airlines</u> on the continued validity of <u>Rayner</u>.  <u>See</u> <u>Rolanda v. Fl. E. Coast Ry.</u>, 873 So.2d 1271, 1273 (Fla. Dist. Ct. App. 2004).  Even so, <u>Rolando</u> recognized that <u>Rayner</u> was correct to the extent that it held that the election of remedies provision in Section 20109(d) "prohibits a railroad employee from electing a state common-law remedy, such as a state wrongful discharge claim." <u>Rolando</u>, 873 So.2d at 1274 n.4.  Because plaintiff here asserts a state common law claim, not a state statutory claim, his claim is preempted even under the reasoning in <u>Rolando</u>.